**SHARP CORPORATION and Sharp Electronics Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 91–08–00632.
Slip Op. 94–73.

United States Court of International Trade.

May 5, 1994.

Donovan Leisure Newton & Irvine, Peter J. Gartland, Christopher K. Tahbaz, New York City, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel: Terrence J. McCartin, Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

## OPINION

MUSGRAVE, Judge.

In this action, plaintiffs Sharp Corporation and Sharp Electronics Corporation (collectively "Sharp") challenge the final results of the administrative review of antidumping findings announced by the International Trade Administration, U.S. Department of Commerce ("ITA" the "Department" or "Commerce"): *Television Receivers, Monochrome and Color, from Japan; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 37,078 (Aug. 2, 1991) (the *"Final Results"*). The *Final Results* cover one manufacturer/exporter of the subject merchandise, Sharp, for the eighth review period (March 1, 1986 through February 28, 1987) and the tenth review period (March 1, 1988 through February 28, 1989). Commerce found dumping margins for Sharp of 20.94% for the eighth period and 30.76% for the tenth review period. Sharp has moved for partial judgment on the agency record with respect to the treatment of the expenses of moving television receivers from Sharp Corporation's factory in Japan to Sharp Electronics Corporation's U.S. warehouse in calculating exporter's sales price ("ESP").

## Background [1]

Sharp Corporation, the manufacturer of the merchandise, made sales during the eighth and tenth review periods to Sharp Electronics Corporation, a wholly-owned subsidiary of Sharp Corporation, which acted as the U.S. distributor for Sharp Corporation. P.R. Document No. 8 at A–10 to A–11, A–13, A–17; P.R. Document No. 9 at A–10 to A–11, A–13, A–17. The merchandise sold by Sharp Corporation to Sharp Electronics Corporation was shipped from Sharp Corporation's factory in Japan to Sharp Electronics Corporation's U.S. warehouse. P.R. Document No. 8 at A–17, C–32, C–34; P.R. Document No. 9 at A–17, C–31, C–33 to C–34. Sharp Electronics Corporation then sold the subject merchandise to unrelated customers in the U.S. and shipped the subject merchandise directly to those customers. P.R. Document No. 8 at A–13, A–17, C–29, C–31, C–32, C–34; P.R. Document No. 9 at A–13, A–17, C–31, C–34.

In calculating United States price ("USP"), Commerce treated these sales as ESP transactions, as defined in 19 U.S.C. § 1677a(c) (1988),[2] and based ESP upon the prices charged by Sharp Electronics Corporation to the unrelated customers. *Final Results*, 56 Fed.Reg. at 37,080. In determining this calculation, Commerce made two types of adjustments to the prices charged by Sharp Electronics Corporation to unrelated customers. First, Commerce made several additions and deductions under 19 U.S.C. § 1677a(d) (1988).[3] *See Television Receiv-*

---

1. The Court quotes without attribution the uncontroverted facts in the record. Citations to documents contained in the public record of this administration review are designated "P.R." Citations to documents contained in the confidential record of this administrative review are designated "C.R."

2. (c) **Exporter's sales price.**—For purposes of this section, the term "exporter's sales price" means the price at which merchandise is sold or agreed to be sold in the United States, before or

after the time of importation, by or for the account of the exporter....

3. (d) **Adjustments to purchase price and exporter's sales price.**—The purchase price and the exporter's sales price shall be adjusted by being—
   (1) increased by—
   (A) when not included in such price, the cost of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States,

ers, *Monochrome and Color, from Japan; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 26,061, 26,062 (the *"Preliminary Results"*). One of the *deductions* which Commerce made under 19 U.S.C. § 1677a(d) was for the expenses of moving the merchandise from Sharp Corporation's factory in Japan to Sharp Electronics Corporation's U.S. warehouse. *See* 19 U.S.C. § 1677a(d)(2)(A); *Preliminary Results,* 56 Fed.Reg. at 26,062; *Final Results,* 56 Fed.Reg. at 37,080. Furthermore, pursuant to 19 U.S.C. § 1677a(e) (1988),[4] Commerce made additional adjustments for ESP sales, including *deductions* for U.S. indirect selling expenses. *Preliminary Results,* 56 Fed.Reg. at 26,062.

Sharp argues, in the comments upon the *Preliminary Results* that Commerce erroneously deducted the expenses of moving the merchandise from Sharp Corporation's factory in Japan to Sharp Electronics Corporation's U.S. warehouse as "movement expenses" pursuant to 19 U.S.C. § 1677a(d)(2)(A) for the ESP sales. Instead, Sharp argues that Commerce should have treated these expenses as "indirect selling expenses," pursuant to 19 U.S.C. § 1677a(e)(2) so that they could be included in the ESP offset "cap" defined in 19 C.F.R.

§ 353.56(b)(2).[5] *See Comments of Sharp Corporation and Sharp Electronics Corporation on Preliminary Results,* dated July 8, 1991, P.R. Document No. 30.

In the *Final Results,* Commerce rejected Sharp's argument, stating that it deducted the U.S. expenses at issue as movement expenses because the statute provides that USP must be reduced by the amount included in the price attributable to any movement charges. 19 U.S.C. § 1677a(d)(2)(A). Further, Commerce considered charges incident to transporting merchandise from the place of shipment in the country of exportation to the place of delivery in the United States to be movement expenses, not indirect selling expenses. *Final Results,* 56 Fed.Reg. at 37,080.

Sharp complains that as a result its ESP offset cap was set too low, thus limiting the amount of home market indirect expenses that were deducted in determining foreign market value ("FMV"). As a consequence, Sharp argues that the dumping margins were artificially inflated. *Plaintiffs' Memorandum,* at 2.

### Standard of Review

██ In reviewing injury, antidumping, and countervailing duty investigations and deter-

---

(B) the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States;

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation; and

(D) the amount of any countervailing duty imposed on the merchandise under part I of this subtitle or section 1303 of this title to offset an export subsidy, and

(2) reduced by—

(A) except as provided in paragraph (1)(D), the amount, if any, included in such price, attributed to any additional costs, charges, and expenses, and United States import duties, incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States; and

(B) the amount, if included in such price, of any export tax, duty, or other charge imposed by the country of exportation on the exportation of the merchandise to the United States other than an export tax, duty, or other charge described in section 1677(6)(C) of this title.

**4.** **(e) Additional adjustments to exporter's sales price.**—For purposes of this section, the exporter's sales price shall also be adjusted by being reduced by the amount, if any, of—

(1) commissions for selling in the United States the particular merchandise under consideration,

(2) expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise, and

(3) any increased value, including additional material and labor, resulting from a process of manufacture or assembly performed on the imported merchandise after the importation of the merchandise and before its sale to a person who is not the exporter of the merchandise.

**5.** See page seven of this opinion for the relevant language of 19 C.F.R. § 353.56.

minations, this Court must hold unlawful any determination unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (*quoting Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Moreover, the Court may not substitute its judgment for that of the agency when the choice is between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it *de novo*. *See American Spring Wire Corp. v. United States*, 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984) (*citing Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464), *aff'd sub nom., Armco, Inc. v. United States*, 760 F.2d 249 (Fed.Cir. 1985).

■ Substantial evidence supporting an agency determination must be based on the whole record. *See Universal Camera Corp.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464 (1951). The "whole record" means that the Court must consider both sides of the record. It is not sufficient to examine merely the evidence that sustains the agency's conclusion. *Id.* In other words, it is not enough that the evidence supporting the agency decision is "substantial" when considered by itself. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp.*, 340 U.S. at 478, 488, 71 S.Ct. at 459, 464.

### Discussion

■ Commerce is required to reduce the USP by any expenses "incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States...." 19 U.S.C. § 1677a(d)(2)(A). No corresponding provision exists with regard to FMV. Under 19 U.S.C. § 1677b(a)(4)(B), the FMV may, however, be adjusted for "other differences in the circumstances of sale." Commerce's implementing regulation requires in general a *direct relationship* between the expense and the particular sale at issue before the FMV may be adjusted. 19 C.F.R. § 353.-56(a).[6]

Sharp argues that Commerce should have treated the U.S. movement expenses as *indirect selling expenses* pursuant to 19 U.S.C. § 1677a(e). *Plaintiffs' Memorandum*, at 2 *et seq.* Sharp asserts that Commerce has long considered presale movement expenses in the home market to be indirect selling expenses, subject to deduction from FMV only as part of the ESP offset in accordance with 19 C.F.R. § 353.56(b)(2). *Id.* at 16. Sharp argues that this principle was first upheld by this Court in *Silver Reed America v. United States*, 7 CIT 23, 581 F.Supp. 1290 (1984), *rev'd on other grounds sub nom. Consumer Prods. Div., SMC Corp. v. Silver Reed America, Inc.*, 753 F.2d 1033 (Fed.Cir.1985) ("*Silver Reed* "). *Id.* In *Silver Reed*, this Court approved Commerce's rationale for treating

---

**6. § 353.56 Differences in circumstances of sale.**

(a) *In general.* (1) In calculating foreign market value, the Secretary will make a reasonable allowance for a *bona fide* difference in the circumstances of the sales compared if the Secretary is satisfied that the amount of any price differential is wholly or partly due to such difference. In general, the Secretary will limit allowances to those circumstances which bear a direct relationship to the sales compared.

(2) Differences in circumstances of sale for which the Secretary will make reasonable allowances normally are those involving differences in commissions, credit terms, guarantees, warranties, technical assistance, and servicing. The Secretary also will make reasonable allowances for differences in selling costs (such as advertising) incurred by the producer or reseller but normally only to the extent that such costs are assumed by the producer or reseller on behalf of the purchaser from....

\* \* \* \* \* \*

(b) Special rule. (1) Notwithstanding paragraph (a), the Secretary normally will make....

(2) In comparisons with exporter's sale price, the Secretary will make a reasonable deduction from foreign market value for all expenses, other than those described in paragraph (a)(1) or (a)(2), incurred in selling such or similar merchandise up to the amount of the expenses, other that those described in paragraph (a)(1) or (a)(2), incurred in selling the merchandise.

presale movement charges as indirect selling expenses:

> [T]here is a valid distinction between *the cost of delivering merchandise to the manufacturer's central warehouse* for storage pending sale and the cost incurred in the delivery of sold merchandise to a shipping warehouse.... In the former case, the delivery expenses *are general overhead costs unrelated to any particular sales,* while in the latter situation the costs are directly related to the particular sales for export.

7 CIT at 35, 581 F.Supp. at 1299 (emphasis added). Further, plaintiffs cite to two recent determinations where Commerce characterized home market presale movement expenses as indirect expenses. *See Portable Electric Typewriters From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 14,072, 14,076 (April 5, 1991); *Color Television Receivers From the Republic of Korea; Final Results of Antidumping Administrative Review,* 56 Fed.Reg. 12,701, 12,705 (March 27, 1991).

Accordingly, Sharp argues that "fairness" requires treatment of the U.S. movement expenses as indirect selling expenses because Commerce has treated home market movement expenses as indirect selling expenses. *Plaintiffs' Memorandum,* at 21 *et seq.* Further, Sharp argues that the Court of Appeals for the Federal Circuit has upheld the validity of 19 C.F.R. § 353.56(b)(2) as a reasonable expression of fair price-to-price comparisons. "[The antidumping statute] expressly requires a fair comparison." *Smith–Corona Group v. United States,* 713 F.2d 1568, 1578 (Fed.Cir.1983) ("*Smith–Corona* ") *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); *See Silver Reed, supra,* 753 F.2d at 1038 (upholding validity of offset cap, and noting that Commerce "perceived an unfairness in the literal application of the statute and undertook to remedy the situation."). *Plaintiffs' Memorandum,* at 22.

Regardless of how Commerce treated home market presale movement expenses in this case, Commerce argues that its treatment of U.S. movement expenses is in accordance with the statute and administrative practice. Commerce asserts that it has been its practice to deduct U.S. movement expenses from PP ("purchase price") and ESP pursuant to 19 U.S.C. § 1677a(d)(2). *Defendant's Memorandum,* at 9–10; *See, e.g., Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Reviews,* 55 Fed.Reg. 35,916, 35,920 (Sept. 4, 1990); *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 16,069, 16,070 (April 19, 1991); *Final Results of Antidumping Duty Administrative Review: Photo Albums and Filler Pages From Hong Kong,* 56 Fed.Reg. 19,342, 19,343 (April 26, 1991).

Commerce argues that in the statutory scheme, Congress provided in 19 U.S.C. § 1677a(d) for various adjustments that are to be made to both PP and ESP. In contrast, in 19 U.S.C. § 1677a(e), Congress provided for different adjustments that are to be made to ESP only. As a result, Commerce argues that it properly construed the statutory scheme as not permitting it to make an adjustment to ESP pursuant to 19 U.S.C. § 1677a(e) for an expense for which an adjustment is *specifically provided* in 19 U.S.C. § 1677a(d) for both PP and ESP. *Defendant's Memorandum,* at 11–12.

With respect to Sharp's "fairness" argument, Commerce argues that this Court has previously held that fairness does not require Commerce to make the same adjustments to FMV as it makes to USP. *Daewoo Electronics Co., Ltd. v. United States,* 13 CIT 253, 274, 712 F.Supp. 931, 950 (1989). *Defendants' Memorandum,* at 13.

Finally, Commerce argues that in any event, the ESP offset was established by the Treasury Department in order to redress a perceived unfairness in comparing ESP, from which indirect selling expenses had been stripped, with FMV, which includes indirect selling expenses. *Id.* at 12. Commerce asserts that it continued the practice of providing for an ESP offset by promulgating 19 C.F.R. § 353.15(d), at present 19 C.F.R. § 353.56(b)(2). *Id.; See Smith–Corona,* 713 F.2d at 1577. Commerce argues that it has interpreted this regulation as addressing only indirect selling expenses which are de-

ductible from ESP pursuant to 19 U.S.C. § 1677a(e). *Id.; See, e.g., Television Receiving Sets, Monochrome and Color, From Japan; Final Results of Administrative Review of Antidumping Finding,* 46 Fed.Reg. 30,163, 30,164 (June 5, 1981). Since the intent of the ESP offset is to redress a perceived unfairness resulting from the deduction from ESP of indirect selling expenses required by 19 U.S.C. § 1677a(e), Commerce argues that the offset is not intended to apply to expenses for which Congress has required adjustments to be made in 19 U.S.C. § 1677a(d) for both PP and ESP. *Id.; See also Smith–Corona,* 713 F.2d at 1577 & n. 29 (stating that expenses which are deducted pursuant to 19 U.S.C. § 1677a(d) are "direct expenses").

In reviewing Commerce's methodology in the instant case, the Court must discern whether Commerce has correctly applied the adjustment provisions of the statute and the regulation. The Court will uphold Commerce's interpretation if it is reasonable and within the context of the statutory purpose. *See American Lamb Co. v. United States,* 785 F.2d 994, 1001 (Fed.Cir.1986).

This Court is unpersuaded by Sharp's arguments. Sharp's position ignores the purposes of the antidumping statute and Commerce's practice, one of which is to derive a FMV and a USP at a comparable point in the stream of commerce. 19 U.S.C. § 1677a(d)–(e), 1677b(a). *See Smith–Corona, supra.* This practice is reasonably calculated to eliminate distortions in USP and FMV by virtue of their different treatment under the statute and the regulations.

In *Zenith Electronics Corporation v. United States,* 988 F.2d 1573, 1582 (Fed.Cir.1993), *reh'g, en banc, denied,* 193 U.S.App. LEXIS 10358 (Fed.Cir. Apr. 29, 1993), the Federal Circuit emphasized that the *Smith–Corona* decision is not applicable in situations where the trade statutes expressly provide a more specific treatment of the issue. The Court concludes that since the antidumping duty statute is silent with regard to the disparity created between FMV and USP with respect to movement expenses, *Smith–Corona* is applicable.

In the case at bar, Sharp has not sufficiently established its statutory authority for its proposed methodology. Furthermore, Sharp has not argued that its U.S. movement expenses are not covered by the language of 19 U.S.C. § 1677a(d). Commerce's determination that in order to obtain an "apples to apples" comparison, it must deduct expenses for moving television receivers from Sharp Corporation's factory in Japan to Sharp Electronics Corporation's U.S. warehouse from the ESP pursuant to 19 U.S.C. § 1677a(d)(2)(A) was reasonable. It is well-established that an agency's reasonable interpretation and application of the statutory and regulatory scheme are entitled to deference. *See, e.g., Ipsco, Inc. v. United States,* 965 F.2d 1056, 1061–62 (Fed.Cir.1992). Commerce's interpretation and application of the statutory and regulatory scheme with respect to Sharp's U.S. movement expenses is thus supported by substantial evidence and is in accordance with law.

### Conclusion

For the foregoing reasons, plaintiffs' motion for partial judgment upon the agency record is denied and the contested *Final Results* of the administrative review are sustained.

### PARTIAL JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED:** that plaintiffs' motion for partial judgment upon the agency record is denied, and it is further

**ORDERED, ADJUDGED, and DECREED:** that plaintiffs have thirty days from the date of this judgment in which to file any additional motions for judgment on the agency record and respond pursuant to the time periods set forth in Rule 56.2 of the Rules of this Court.