SKF USA INC. and SKF Industrie, S.p.A., Plaintiffs,

v.

UNITED STATES, Defendant,

The Torrington Company; Federal–Mogul Corporation, Defendant-Intervenors.

Slip Op. 95–6.
Court No. 92–07–00513.

United States Court of International Trade.

Jan. 20, 1995.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Thomas J. Trendl and Juliana M. Cofrancesco, Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Marc E. Montalbine, of counsel; Stephen J. Claeys, Dean A. Pinkert, Stacy J. Ettinger and Thomas H. Fine, Attys., Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine and Myron A. Brilliant, Washington, DC, for defendant-intervenor, The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, Larry Hampel, J. Eric Nissley and Joseph A. Perna, V, Washington, DC, for defendant-intervenor, Federal–Mogul Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, SKF USA Inc. and SKF Industrie, S.p.A. ("SKF"), commenced this action challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce" or "ITA") final results of its administrative review concerning antifriction bearings ("AFB") (other than tapered roller bearings) and parts thereof from Italy. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (June 24, 1992).

Specifically, plaintiffs contest Commerce's (1) imposition of a difference in merchandising adjustment cap ("difmer") as a test for identifying similar merchandise; (2) disregarding plaintiffs' claim that U.S. inland insurance expense was insignificant and application of the reported insurance rate to U.S. price ("USP") when the rate reported was based upon inventory value, thereby resorting to best information available ("BIA"); (3) disallowance of early payment cash discounts as an adjustment to foreign market value ("FMV"); (4) rejection of plaintiffs' reporting of domestic presale inland freight on its U.S. sales and punitive resorting to best information available; (5) failure to account for discounts and rebates in its profit calculation on further manufactured merchandise; and (6) disallowance of certain billing adjustments as a direct adjustment to foreign market value.

### Background

On May 15, 1989, Commerce published antidumping duty orders on ball bearings, cylindrical roller bearings and spherical plain bearings and parts thereof. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany*, 54 Fed.Reg. 20,900 (May 15, 1989). On June 28, 1991, July 19, 1991 and August 14, 1991, Commerce initiated administrative reviews with respect to

various manufacturers and exporters from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom, including SKF Industrie, S.p.A., for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews,* 56 Fed.Reg. 29,618 (June 28, 1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed. Reg. 33,251 (July 19, 1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed.Reg. 40,305 (August 14, 1991).

On March 31, 1992, Commerce published the preliminary results of its second administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed.Reg. 10,859 (March 31, 1992).

On June 24, 1992, Commerce published one joint final determination for the nine administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 28,360 (June 24, 1992).

On July 24, 1992, SKF filed its summons in this case, challenging the final results with respect to Italy.

### Discussion

■ This Court must uphold final results of an ITA administrative review unless the ITA determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685

F.Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. Difference in Merchandise Adjustment Cap

SKF challenges Commerce's use of a 20% difference in merchandise adjustment cap, in addition to a family model match methodology which takes eight physical criteria into account, to determine what constitutes similar merchandise. According to SKF, Commerce's institution of a difmer cap, after a hearing which followed the second review preliminary results, is a last-minute change which undermines the ability of parties to predict Commerce's actions and to alter their pricing behavior. SKF also alleges that Commerce failed to sufficiently explain its change in methodology. In sum, SKF challenges Commerce's imposition of the difmer cap in the second review where there was no difmer cap in the first review. *Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("SKF's Brief")* at 20–30.

Commerce argues that the application of the difmer cap was a proper exercise of its discretion and was meant to ensure that a reasonable comparison of merchandise would be made. Commerce asserts that it has broad discretion in its selection of what constitutes "similar" merchandise and may refine its methodology in succeeding reviews. Since the two tests employed in the final determination of the second review are complimentary, the cap minimizes the effects of distortions where there is a difference in the variable costs of production and there are no circumstances in this case to warrant disregarding the cap, Commerce claims its decision was in accordance with law. Commerce states that as this is only the second review, SKF cannot claim a significant reliance on the fact that Commerce had not applied the 20% difmer cap in the original investigation or in the first administrative review. *Defen-*

*dant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 6–16.

Defendant-intervenor The Torrington Company ("Torrington") agrees with SKF that the difmer cap should not be applied and additionally, contests the use of the family model match methodology. Torrington alleges that Commerce's definition of "similar merchandise" was impermissibly narrow and limiting. *Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Torrington's Brief")* at 7–15.

Defendant-intervenor Federal–Mogul Corporation ("Federal–Mogul") opposes SKF on grounds that SKF failed to show that the use of the difmer cap had any effect on the margin calculations. *Opposition of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record ("Federal–Mogul's Brief")* at 25–27.

■ When identical merchandise is not available in the home market for comparison with the merchandise sold to the United States, Commerce must select "similar" comparison merchandise based upon the physical characteristics of the merchandise being compared. 19 U.S.C. § 1677(16) (1988).[1] Commerce has been granted broad discretion to devise a methodology for determining what constitutes "similar" merchandise. *See Smith–Corona Group v. United States,* 713 F.2d 1568, 1571 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

■ An accurate investigation requires that the merchandise used in the comparison be as similar as possible. Furthermore, there is a statutory preference for comparison of most similar, if not identical merchandise for the purpose of FMV calculations. 19 U.S.C. § 1677(16); *see Timken Co. v. United States ("Timken I"),* 10 CIT 86, 96, 630 F.Supp. 1327, 1336 (1986). Undoubtedly, Commerce's fundamental objective in an antidumping investigation is to compare the United States price of imported merchandise with the value of "such or similar merchandise" sold in the foreign market. *Timken I,* 10 CIT at 95, 630 F.Supp. at 1336.

Thus, contrary to the assertion of Torrington, the statute does not require Commerce to use a methodology that identifies the greatest number of matches of similar merchandise.

■ Further, when comparing merchandise which is similar, 19 U.S.C. § 1677b(a)(4)(C) (1988) directs Commerce to adjust foreign market value for differences in merchandise being compared.

In this administrative review, Commerce determined what constituted "similar merchandise" for purposes of comparing U.S. and foreign market sales by grouping bearings into families based upon eight defined physical characteristics. Commerce also employed a 20% difmer cap so that bearings having a greater than 20% difference in their variable costs of manufacture would not be treated as "similar." *Final Results,* 57 Fed. Reg. at 28, 364–67.

This Court finds that Commerce's action was within the broad discretion it is granted to determine "similar merchandise". Its action on this issue was in accordance with law

---

1. 19 U.S.C. § 1677(16) (1988) provides:

The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purpose of part II of this subtitle can be satisfactorily made:
(A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.
(B) Merchandise—
(i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,
(ii) like that merchandise in component material or materials and in the purposes for which used, and
(iii) approximately equal in commercial value to that merchandise.
(C) Merchandise—
(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,
(ii) like that merchandise in the purposes for which used, and
(iii) which the administering authority determines may reasonably be compared with that merchandise.

and supported by substantial evidence and is hereby affirmed.

### 2. *U.S. Inland Insurance Expense Adjustment*

SKF contests Commerce's adjustment of USP for U.S. inland insurance expense. First, SKF claims that the expense was insignificant and should therefore have been disregarded, pursuant to 19 C.F.R. § 353.59(a) (1992). SKF asserts its U.S. inland insurance rate to be well within the guideline provided in 19 C.F.R. § 353.59(a). Second, SKF asserts Commerce inappropriately applied BIA. SKF states it omitted the requested information from the computer tape because it considered it insignificant, but reported the information in its Section B narrative response. SKF states Commerce unreasonably resorted to BIA because Commerce accepted SKF's reporting both in the first review and in the preliminary results of the second review and did not request SKF to supplement or correct its reporting. Finally, SKF alternatively argues that if the adjustment was warranted, Commerce used the incorrect information by applying the insurance rate to unit price even though it had been reported as a percentage of inventory value. *SKF's Brief* at 30–34.

SKF requests a remand with instructions to Commerce to either disregard SKF's U.S. inland insurance or apply its rate to the reported base of inventory value. *Id.*

Commerce's position is that the adjustment was reasonable and that its use and choice of BIA was reasonable as well, since SKF failed to provide the information requested. Commerce asserts it alone has the discretionary authority to disregard insignificant adjustments pursuant to 19 C.F.R. § 353.59(a) and, as there was clear evidence that inland insurance expenses existed, Commerce properly adjusted for it. Commerce also claims its use of BIA was appropriate since it requested that SKF report the information under appropriately labeled variables. Although SKF did report the amount of inland insurance expense in its narrative response, it specifically refused to include the information in its computer tapes. Commerce asserts such non-compliance justifies the use of BIA and its choice of BIA (the U.S. inland insurance rate reported in SKF's narrative submission to unit prices less billing adjustments) was a reasonable choice. *Defendant's Brief* at 16–20.

Defendant-intervenors Torrington and Federal–Mogul echo the arguments made by Commerce, pointing out that SKF had five months in which to correct the submitted information. *Torrington's Brief* at 15–21; *Federal–Mogul's Brief* at 7–10.

19 U.S.C. § 1677f–1(a) (1988) provides:

For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority *may*—

.    .    .    .    .

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

(Emphasis added.)

19 C.F.R. § 353.59(a) states:

The Secretary *may* disregard adjustments to foreign market value which are insignificant. *Ordinarily*, the Secretary will disregard individual adjustments having an *ad valorem* effect of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of less than 1.0 percent, of the foreign market value.

(Emphasis added.)

Thus, the statute provides not only that Commerce is the appropriate authority to determine whether an adjustment is insignificant, but also that it is Commerce that has the discretion to determine whether or not to disregard an insignificant adjustment. This Court therefore finds that it was properly within Commerce's discretion to determine whether the adjustment at issue was insignificant and whether or not to disregard it.

SKF assigned "zero" to its U.S. inland insurance variable on its computer tape. As a result, Commerce determined that:

... SKF understated the amounts of U.S. inland insurance on its computer tape. We

have used the factor provided by SKF [in the narrative portion of its questionnaire response] to calculate U.S. inland freight and deducted this amount from U.S. price for the final results.

*Final Results,* 57 Fed.Reg. at 28,398.

■ The antidumping statute provides that, whenever a party refuses or is unable to provide information requested in a timely manner and in the form required, Commerce shall use BIA. 19 U.S.C. § 1677e(c) (1988). In this case, however, the record reveals that Commerce had not requested this information or, more accurately, instructed SKF not to report it on its computer tapes having reported it in its narrative response. Commerce's questionnaire specifically instructed:

> ... omit any expense item for which the values for all sales are derived by applying the same factor or percentage to the value of another item. For example, if the per-unit direct advertising expense amount is derived for all ESP sales by multiplying the unit price by three percent, do not include the direct advertising variable in your computer listing. Provide the factor or percentage, and the basis to which it should be applied, in your narrative response.

Public Document No. 26, frame 1721, p. 15. U.S. inland insurance expense was exactly such an expense item, reported as a percentage. SKF complied with the instructions, providing in its narrative response the applicable percentage and the item against which the percentage should be multiplied. It is uncontroverted that SKF provided this information in its narrative response. Therefore, this Court finds that Commerce should not have resorted to BIA.

■ Having determined that it was not for SKF to decide whether its expense was insignificant or should be disregarded and that Commerce should nonetheless not apply BIA, this Court must determine what information should be applied for SKF's U.S. inland insurance expense. Although SKF reported that the correct base to which SKF's insurance rate should be applied was inventory value, Commerce applied the rate to unit price, calling it BIA. Commerce provided no explanation for choosing price over value or for rejecting the information provided by SKF. Upon consideration of the record, this Court can find no reason that Commerce should have chosen a price base in place of the cost base provided. Therefore, this Court finds that Commerce's application of the U.S. inland insurance rate reported in SKF's narrative submission to the unit price less billing adjustments was not supported by substantial evidence. This issue is remanded for Commerce to apply SKF's U.S. inland insurance rate to inventory value.

### 3. *Early Payment Cash Discounts*

■ SKF contends that Commerce's rejection of SKF's cash discounts on home market sales as a direct adjustment to foreign market value is contrary to law since the discounts were verified and directly related to sales. SKF states Commerce unreasonably deviated from its methodology in the first review. SKF argues that, at minimum, Commerce should treat the discounts as an indirect adjustment to FMV as it typically has done with expenses disallowed as direct expenses. *SKF's Brief* at 34–41.

SKF made a claim for home market cash discounts as to three of its business units, Cuscinetti, Industrie and Speciali. For sales by Cuscinetti, SKF states cash discounts were available to all customers under certain payment terms. Those sales during the period of review were divided by the cash discounts granted to arrive at the cash discount rate. SKF asserts that as the rates reported match those set forth in payment terms, all customers eligible for the discounts must have indeed been granted such discounts. Accordingly, SKF argues, the discounts granted and reported by Cuscinetti are directly related to the reported sales for which cash discounts were claimed. *Id.* at 34–37.

For sales by Industrie and Speciali, SKF explains that for each company, total cash discounts granted were divided by total home market sales for 1990 and for the first four months of 1991. The resultant factors were then multiplied by the price to derive a per unit cash discount value reported by Industrie and Speciali in their sales response. The two entities reported discounts by allocating,

on a period basis, all home market discounts across all home market sales. SKF asserts this reporting methodology was reasonable and accurate. *Id.* at 37–38.

Commerce asserts its denial of both direct and indirect adjustments was proper because SKF failed to report the claimed discounts on an actual sales-specific or customer-specific basis. Commerce states it generally does not permit the allocation of discounts, but instead requires that they be reported on a transaction-specific basis. Commerce emphasizes that it does not permit the allocation of discounts across all sales because such a practice distorts actual prices for each specific sale: sales for which a discount was incurred will be allocated less of the discount than was actually incurred and sales for which no discount was incurred will nonetheless be allocated a portion of the total discounts. The only exception to the allocation of discounts that Commerce allowed in this review was when a customer-specific allocation was used, in which case Commerce would grant such a discount as an indirect expense. *Defendant's Brief* at 21–27.

With respect to Cuscinetti, Commerce states SKF failed to report the cash discounts on either a transaction-specific or customer-specific basis. Commerce states the total discounts granted were allocated across all sales for which the discount was offered, irrespective of whether the discounts were actually incurred on each of those sales. With respect to Industrie and Speciali, Commerce asserts that these companies did not have cash discount programs at all. Commerce states that when these companies had been underpaid by certain customers, the companies referred to the amount by which they had been underpaid as "cash discounts." Commerce asserts such underpayments are not properly considered cash discounts. As with the discounts claimed by Cuscinetti, Commerce states those claimed by Industrie and Speciali were not reported in either a transaction-specific or a customer-specific manner. *Id.* at 22–26.

Torrington and Federal–Mogul agree with the arguments made by Commerce and request that the Court affirm Commerce's ac-

tion. *Torrington's Brief* at 21–25; *Federal–Mogul's Brief* at 11–17.

Commerce explained its methodology in the Final Results:

> The Department has treated home market discounts, rebates and price adjustments as *direct* expenses if they could be traced on a transaction-specific basis. This includes adjustments that were incurred as a fixed and constant percentage of sales price over all sales and were reported on a customer- or product-specific basis. If these adjustments were not fixed and constant but reported on a customer-specific basis, they were treated as *indirect* expenses. If the discounts, rebates and price adjustments could not be traced on a customer-specific basis, *no adjustment* was made. Although we allowed customer-specific allocations on home market sales in the first reviews, we have reconsidered our position and decided to allow only price adjustments which were tied to specific sales under comparison. In this way, we avoid applying reductions to FMV for sales that did not actually incur those reductions.

*Final Results,* 57 Fed.Reg. at 28,400 (emphasis added).

Upon consideration of the administrative record, this Court finds that in the case of all three entities, Cuscinetti, Industrie and Speciali, SKF's allocation of discounts fails to distinguish those sales for which cash discounts were granted from those for which cash discounts were not granted.

Commerce makes adjustments for discounts and rebates pursuant to 19 U.S.C. § 1677a (1988) and 19 U.S.C. § 1677b (1988), which require it to determine what price was actually charged for subject merchandise. *See Torrington Co. v. United States,* 17 CIT ——, ——, 818 F.Supp. 1563, 1578–79 (1993). More specifically, the Federal Circuit has held that, to allow an adjustment to FMV, it must be directly correlated with specific in-scope merchandise on the basis of actual costs. *Smith–Corona Group v. United States,* 713 F.2d 1568, 1580 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

Because it failed to report its claimed cash discounts on a customer-specific or transaction-specific basis, SKF cannot be allowed a direct or an indirect adjustment to FMV for home market cash discounts. *See Torrington Co. v. United States*, 17 CIT ——, 850 F.Supp. 1 (1993). Thus, this Court does not reach the issue of whether, in the case of Industrie and Speciali, underpayment by certain customers constitutes a cash discount, and hereby affirms Commerce's actions on the basis of SKF's allocation methodology.

### 4. *Reporting of Domestic Presale Inland Freight*

■ SKF asserts Commerce acted arbitrarily and without support in the record by rejecting SKF's reporting methodology for domestic presale inland freight. SKF states Commerce erred by applying another respondent's rate as BIA. Finally, SKF argues Commerce should have made a corresponding direct adjustment to foreign market value. *SKF's Brief* at 41–45.

Commerce states it properly applied its methodology of treating pre-sale inland freight as a movement expense and deducting it from USP. Commerce asserts that for purposes of this deduction it must analyze individual U.S. sales. Because SKF did not report its presale inland freight separately, as it had been requested to do, but in a pool of U.S. indirect selling expenses, Commerce argues it properly resorted to the use of BIA. *Defendant's Brief* at 28–33. Defendant-intervenors Torrington and Federal–Mogul agree with the position taken by Commerce. *Torrington's Brief* at 25–31; *Federal–Mogul's Brief* at 18–23.

Commerce is required to reduce USP by movement expenses. 19 U.S.C. § 1677a(d) (1988) states, in pertinent part:

The purchase price and the exporter's sales price shall be adjusted by being—

. . . . .

(2) [reduced by—]

(A) . . . the amount, if any, included in [such price, attributable to any additional costs, charges, and expenses, and United States import duties,] *incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States.*

(Emphasis added.) *See also* 19 C.F.R. § 353.41(d)(2)(i) (1992).

In this review, Commerce requested that SKF report its domestic presale inland freight expenses. Commerce's questionnaire included separate questions for those expenses and for other export-related indirect selling expenses. In fact, the two questions appeared ten pages apart. Public Document No. 27, frame 1821–32, pp. 23–33. It is clear from these separate questions that Commerce did not intend the expenses to be reported together in one pool. *See id.* SKF, however, did not separately report domestic presale inland freight as a direct expense and included the expense as part of export selling expenses. *SKF's Brief* at 42.

SKF's presale inland freight expenses involve expenses in the U.S. market, not the home market. It is well-established that the adjustment to be made when a respondent has failed to properly report those expenses is to treat them as direct expenses, even though this may have the effect of lowering USP and increasing dumping margins. *See, e.g., Timken Co. v. United States*, 11 CIT 786, 804, 673 F.Supp. 495, 512–13 (1987); *see also Torrington Co. v. United States*, 17 CIT ——, ——, 832 F.Supp. 365, 376, 378 (1993); *see also Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review*, 57 Fed.Reg. 4,951, 4,955 (Feb. 11, 1992); *see also Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 65,228, 65,229 (Dec. 16, 1991). In addition, there is no basis for SKF's assertion that Commerce must make a corresponding direct adjustment to foreign market value. *See Sharp Corp. and Sharp Elecs. Corp. v. United States*, 18 CIT ——, ——, 852 F.Supp. 1072, 1076–77 (1994). This Court therefore affirms the methodology employed by Commerce.

The antidumping statute provides that, whenever a party refuses or is unable to provide information requested in a timely manner and in the form required, Commerce shall use BIA. 19 U.S.C. § 1677e(c) (1988). In this case, that is precisely what happened: SKF failed to separately report its pre-sale inland freight expenses, although Commerce had instructed SKF to do so. Therefore, this Court finds that Commerce properly resorted to BIA.

As Commerce's treatment of domestic pre-sale inland freight and its application of BIA were in accordance with law and supported by substantial evidence, this issue is hereby affirmed.

### 5. Discounts and Rebates on Further Manufactured Merchandise

SKF contends that, although Commerce's practice is to make an adjustment to price for discounts and rebates in the profit calculation of further manufactured merchandise as well as in its calculation of USP and FMV, Commerce improperly failed to account for such discounts and rebates in its profit calculation in this case. *SKF's Brief* at 45–47. Commerce requests a remand of this issue so it can deduct discounts and rebates before calculating the profit on U.S. further manufactured sales. *Defendant's Brief* at 33.

In its reply brief, SKF respectfully seeks to withdraw its claim as to this issue because an additional analysis of the Commerce program revealed that the appropriate price adjustments had indeed been done. *Reply Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record* at 43–44.

Accordingly, this Court will not further discuss this issue and does hereby affirm Commerce's action on this issue.

### 6. Billing Adjustments

SKF asserts Commerce improperly disallowed certain of SKF's home market billing adjustments as direct adjustments to foreign market value. These adjustments were reported on a customer-specific basis because SKF was unable to report them on a transaction-specific or product-specific basis. SKF asserts that, after accepting SKF's bill-

ing adjustments at verification and in its preliminary results, Commerce abused its discretion by later rejecting them. *SKF's Brief* at 48.

Commerce responds that it properly rejected the direct adjustments because they were not reported on a transaction-specific basis. Commerce treated adjustments which were allocated upon a customer-specific basis as indirect selling expenses. Commerce reiterates its arguments discussed above regarding SKF's claimed adjustment for discounts. *Defendant's Brief* at 34–36. Federal–Mogul agrees with the position taken by Commerce. *Federal–Mogul's Brief* at 23–24.

Torrington agrees that Commerce properly disallowed a direct adjustment to FMV, but argues that Commerce erred in allowing even an indirect adjustment to FMV for billing adjustments because they could not be identified to particular sales transactions or be limited to in-scope merchandise. *Torrington's Brief* at 31–35.

Commerce explained its methodology:

The Department has treated home market discounts, rebates and price adjustments as *direct* expenses if they could be traced on a transaction-specific basis. This includes adjustments that were incurred as a fixed and constant percentage of sales price over all sales and were reported on a customer- or product-specific basis. If these adjustments were not fixed and constant but reported on a customer-specific basis, they were treated as *indirect* expenses. If the discounts, rebates and price adjustments could not be traced on a customer-specific basis, *no adjustment* was made. Although we allowed customer-specific allocations on home market sales in the first reviews, we have reconsidered our position and decided to allow only price adjustments which were tied to specific sales under comparison. In this way, we avoid applying reductions to FMV for sales that did not actually incur those reductions.

*Final Results,* 57 Fed.Reg. at 28,400 (emphasis added).

For the reasons set out above regarding SKF's claimed adjustment for discounts (is-

sue number 3), this Court affirms Commerce's decision to deny direct adjustments to FMV for home market billing adjustments because SKF did not report them on a transaction-specific basis and they were not a fixed and constant percentage of sales price over all sales. As to Commerce's decision to treat billing adjustments as indirect selling expenses when reported on a customer-specific basis, this Court finds, as it has done in the past, that methodology to be reasonable and in accordance with law. *See Torrington Co. v. United States,* 17 CIT ——, ——, 832 F.Supp. 365, 377 (1993), *modified, in part, remanded,* 18 CIT ——, 850 F.Supp. 7 (1994). Therefore, this Court affirms Commerce's action as to this issue.

### *Conclusion*

For the foregoing reasons, this case is remanded to Commerce for application of SKF's U.S. inland insurance rate to inventory value. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### *ORDER*

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration, for application of SKF's U.S. inland insurance rate to inventory value; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.