**SKF USA INC. and SKF France, S.A., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company; Federal–Mogul Corporation, Defendant-intervenors.**

Slip Op. 95–16.
Court No. 92–07–00516.

United States Court of International Trade.

Feb. 8, 1995.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Juliana M. Cofrancesco and Thomas J. Trendl, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Marc E. Montalbine, of counsel: Stephen J. Claeys, Stacy J. Ettinger and Craig R. Giesze, Attorneys, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine and Myron A. Brilliant, for defendant-intervenor, The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, Larry Hampel, J. Eric Nissley and Joseph A. Perna, V, for defendant-intervenor, Federal–Mogul Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, SKF USA Inc. and SKF France, S.A. ("SKF"), commenced this action challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce" or "ITA") final results of its administrative review concerning antifriction bearings (other than tapered roller bearings) ("AFB") and parts thereof from France. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (June 24, 1992).

Specifically, plaintiffs contest Commerce's (1) imposition of a difference in merchandising adjustment cap ("difmer") as a test for identifying similar merchandise; (2) disallowance of home market indirect selling expenses incurred on sales to a related distributor; (3) reduction of the home market indirect selling expense adjustment; and (4) disregarding of plaintiffs' claim that its U.S. inland insurance expense was insignificant and application of the reported insurance rate to U.S. price ("USP") when the rate reported was based upon inventory value, thereby resorting to best information available ("BIA").

## Background

On May 15, 1989, Commerce published antidumping duty orders on ball bearings, cylindrical roller bearings and spherical plain bearings and parts thereof. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany*, 54 Fed.Reg. 20,900 (May 15, 1989). On June 28, 1991, July 19, 1991 and August 14, 1991, Commerce initiated administrative reviews with respect to various manufacturers and exporters from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom, including SKF France, S.A., for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews*, 56 Fed.Reg. 29,618 (June 28, 1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 56 Fed. Reg. 33,251 (July 19, 1991); *Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 56 Fed.Reg. 40,305 (August 14, 1991).

On March 31, 1992, Commerce published the preliminary results of its second administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews*, 57 Fed.Reg. 10,859 (March 31, 1992).

On June 24, 1992, Commerce published one joint final determination for the nine administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 28,360 (June 24, 1992).

On July 24, 1992, SKF filed its summons in this case, challenging the final results with respect to France.

### Discussion

■ This Court must uphold final results of an ITA administrative review unless the ITA determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (FedCir.1990).

### 1. *Difference in Merchandise Adjustment Cap*

■ SKF challenges Commerce's use of a 20% difference in merchandise adjustment cap, in addition to a family model match methodology which takes eight physical criteria into account, to determine what constitutes similar merchandise. According to SKF, Commerce's institution of a difmer cap, after a hearing which followed the second review preliminary results, is a last-minute change which undermines the ability of parties to predict Commerce's actions and to alter their pricing behavior. SKF also alleges that Commerce failed to sufficiently explain its change in methodology. In sum, SKF challenges Commerce's imposition of the difmer cap in the second review where there was no difmer cap in the first review. *Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("SKF's Brief")* at 17–28.

Commerce argues that the application of the difmer cap was a proper exercise of its discretion and was meant to ensure that a reasonable comparison of merchandise would be made. Commerce asserts that it has broad discretion in its selection of what constitutes "similar" merchandise and may refine its methodology in succeeding reviews. Since the two tests employed in the final determination of the second review are complimentary, the cap minimizes the effects of distortions where there is a difference in the variable costs of production and there are no circumstances in this case to warrant disregarding the cap, Commerce claims its decision was in accordance with law. Commerce states that as this is only the second review, SKF cannot claim a significant reliance on the fact that Commerce had not applied the 20% difmer cap in the original investigation or in the first administrative review. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 5–16.

Defendant-intervenor The Torrington Company ("Torrington") agrees with SKF that the difmer cap should not be applied and additionally, contests the use of the family model match methodology. Torrington alleges that Commerce's definition of "similar merchandise" was impermissibly narrow and limiting. *Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Torrington's Brief")* at 6–14.

Defendant-intervenor Federal–Mogul Corporation ("Federal–Mogul") opposes SKF on grounds that Commerce is required to consider commercial value in determining similar merchandise. *Opposition of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record ("Federal–Mogul's Brief")* at 19–22.

 When identical merchandise is not available in the home market for comparison with the merchandise sold to the United States, Commerce must select "similar" comparison merchandise based upon the physical characteristics of the merchandise being compared. 19 U.S.C. § 1677(16) (1988).[1] Commerce has been granted broad discretion to devise a methodology for determining what constitutes "similar" merchandise. *See Smith–Corona Group v. United States,* 713 F.2d 1568, 1571 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

 An accurate investigation requires that the merchandise used in the comparison be as similar as possible. Furthermore, there is a statutory preference for comparison of most similar, if not identical merchandise for the purpose of foreign market value ("FMV") calculations. 19 U.S.C. § 1677(16); *see Timken Co. v. United States,* 10 CIT 86, 96, 630 F.Supp. 1327, 1336 (1986). Undoubtedly, Commerce's fundamental objective in an antidumping investigation is to compare the United States price of imported merchandise with the value of "such or similar merchandise" sold in the foreign market. *Timken Co.,* 10 CIT at 95, 630 F.Supp. at 1336.

Thus, contrary to the assertion of Torrington, the statute does not require Commerce to use a methodology that identifies the greatest number of matches of similar merchandise.

Further, when comparing merchandise which is similar, 19 U.S.C. § 1677b(a)(4)(C) (1988) directs Commerce to adjust foreign market value for differences in merchandise being compared.

In this administrative review, Commerce determined what constituted "similar merchandise" for purposes of comparing U.S. and foreign market sales by grouping bearings into families based upon eight defined physical characteristics. Commerce also employed a 20% difmer cap so that bearings having a greater than 20% difference in their variable costs of manufacture would not be treated as "similar." *Final Results,* 57 Fed. Reg. at 28,364–67.

This Court finds that Commerce's action was within the broad discretion it is granted to determine "similar merchandise". *See SKF USA Inc. and SKF GmbH v. United States ("SKF USA Inc. and SKF GmbH"),* 19 CIT ——, ——, 875 F.Supp. 847, 849–50 (1995); *see SKF USA Inc. and SKF Industrie, S.p.A. v. United States ("SKF USA Inc."),* 19 CIT ——, ——, 874 F.Supp. 1395, 1398–99 (1995). Its action on this issue was in accordance with law and supported by substantial evidence and is hereby affirmed.

### 2. *Indirect Selling Expenses on Sales to Related Distributor*

 SKF asserts the indirect selling expenses incurred by SKF French manufactur-

---

1. 19 U.S.C. § 1677(16) (1988) provides:

The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purpose of part II of this subtitle can be satisfactorily made:

(A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise—

(i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,

(ii) like that merchandise in component material or materials and in the purposes for which used, and

(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise—

(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,

(ii) like that merchandise in the purposes for which used, and

(iii) which the administering authority determines may reasonably be compared with that merchandise.

ing companies on sales to SOS, a related distributor, should have been allowed as an adjustment to SOS sales to unrelated parties. Citing 19 U.S.C. § 1677b(a)(4)(B) (1988) and 19 C.F.R. § 353.56(b)(2) (1992), SKF contends the adjustment should have been allowed because Commerce verified the expenses of the SKF French manufacturing companies and acknowledged these expenses by reducing the adjustment factor on non-SOS sales by an amount purported to represent these expenses. SKF states that the statute does not distinguish between expenses to related and unrelated entities and, therefore, Commerce should not have disallowed actual expenses on SKF sales to SOS on grounds that the sales were to a related party. Because Commerce adjusts exporter's sales price ("ESP") for indirect selling expenses incurred before the sale to the first unrelated party in the U.S., SKF states a fair comparison of USP to FMV requires the allowance of these "first level" expenses as a circumstance of sale adjustment in the home market. *SKF's Brief* at 28–35.

Commerce concedes that a manufacturer (SKF) might incur selling expenses on behalf of its related distributor (SOS) which do indeed relate to the sale from the distributor to the ultimate purchaser and which should therefore be allowed as indirect selling expenses. In this case, however, Commerce states SKF provided a lump sum figure for each category of "first level" indirect expenses (on the sales from SKF to SOS) without specifying which portion of the expenses related to SOS's sales to the unrelated purchaser and which related only to SKF's sales to SOS. *Defendant's Brief* at 16–18.

Commerce also concedes that it did not specifically request that SKF allocate its indirect expenses in such a manner and that its blanket denial of SKF's claimed adjustment for "first level" indirect expenses is not supported by the administrative record. Commerce requests a remand to correct its adjustment for indirect selling expenses accordingly. *Id.*

Torrington and Federal–Mogul disagree with SKF and Commerce, asserting SKF improperly allocated its expenses on SOS sales to unrelated buyers. *Torrington's Brief* at 16–18; *Federal–Mogul's Brief* at 9–19.

This Court agrees with Commerce and remands this issue for Commerce to include in its circumstance of sale adjustment "first level" indirect selling expenses incurred by SKF which relate to SOS's sales to unrelated purchasers.

3. *Reduction of Indirect Selling Expense Totals*

SKF also contests Commerce's reduction of the indirect selling expense adjustment allowed SKF French manufacturing companies on non-SOS home market sales (a reduction by the ratio of related party sales to total sales). SKF asserts Commerce unlawfully altered its methodology for calculating indirect selling expenses and used incorrect calculations, thereby inappropriately applying best information available. SKF states that had Commerce wanted an indirect selling expense adjustment exclusive of SOS sales, it should have reduced both the numerator and denominator of the ratio, not only the numerator. *SKF's Brief* at 35–42.

Commerce does not respond specifically to this argument. However, it has conceded above that SKF might incur selling expenses on behalf of SOS which do indeed relate to the sale to the ultimate purchaser and which should therefore be allowed as indirect selling expenses and deducted from FMV. Commerce also conceded that it did not specifically request SKF to allocate its indirect expenses in such a manner and that its blanket denial of SKF's claimed adjustment for "first level" indirect expenses is not supported by the administrative record. *Defendant's Brief* at 16–18.

Torrington and Federal–Mogul disagree with SKF, asserting it was proper for Commerce to reduce indirect selling expense totals for expenses between SKF and SOS. *Torrington's Brief* at 19–22; *Federal–Mogul's Brief* at 9–19.

As this Court has remanded this issue for Commerce to include in its circumstance of sale adjustment "first level" indirect selling expenses incurred by SKF which relate to SOS's sales to unrelated purchasers, Com-

merce is also ordered to correct its home market indirect selling expense adjustment accordingly, allowing a reduction only to the extent of expenses incurred by SKF which do not relate to SOS sales to the unrelated purchaser.

### 4. *U.S. Inland Insurance Expense Adjustment*

SKF contests Commerce's adjustment of USP for U.S. inland insurance expense. First, SKF claims that the expense was insignificant and should therefore have been disregarded, pursuant to 19 C.F.R. § 353.59(a) (1992). SKF asserts its U.S. inland insurance rate to be well within the guideline provided in 19 C.F.R. § 353.59(a). Second, SKF asserts Commerce inappropriately applied BIA. SKF states it omitted the requested information from the computer tape because it considered it insignificant, but reported the information in its Section B narrative response. SKF states Commerce unreasonably resorted to BIA because Commerce accepted SKF's reporting both in the first review and in the preliminary results of the second review and did not request SFK to supplement or correct its reporting. Finally, SKF alternatively argues that if the adjustment was warranted, Commerce used the incorrect information by applying the insurance rate to unit price even though it had been reported as a percentage of inventory value. *SKF's Brief* at 42–45.

SKF requests a remand with instructions to Commerce to either disregard SKF's U.S. inland insurance or apply its rate to the reported base of inventory value. *Id.*

■ Commerce's position is that the adjustment was reasonable and that its use and choice of BIA were reasonable as well, since SKF failed to provide the information requested. Commerce asserts it alone has the discretionary authority to disregard insignificant adjustments pursuant to 19 C.F.R. § 353.59(a) and, as there was clear evidence that inland insurance expenses existed, Commerce properly adjusted for them. Commerce also claims its use of BIA was appropriate since it requested that SKF report the information under appropriately labeled variables. Although SKF did report the amount

of inland insurance expense in its narrative response, it specifically refused to include the information in its computer tapes. Commerce asserts such non-compliance justifies the use of BIA and its choice of BIA (the U.S. inland insurance rate reported in SKF's narrative submission applied to unit prices) was reasonable. *Defendant's Brief* at 18–22.

Defendant-intervenors Torrington and Federal–Mogul echo the arguments made by Commerce, pointing out that SKF had five months in which to correct the submitted information. *Torrington's Brief* at 22–27; *Federal–Mogul's Brief* at 5–9.

19 U.S.C. § 1677f–1(a) (1988) provides:

For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority *may—*

. . . . .

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

(Emphasis added.)

19 C.F.R. § 353.59(a) states:

The Secretary *may* disregard adjustments to foreign market value which are insignificant. *Ordinarily,* the Secretary will disregard individual adjustments having an *ad valorem* effect of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of less than 1.0 percent, of the foreign market value.

(Emphasis added.)

Thus, the statute provides not only that Commerce is the appropriate authority to determine whether an adjustment is insignificant, but also that it is Commerce that has the discretion to determine whether or not to disregard an insignificant adjustment. This Court therefore finds that it was properly within Commerce's discretion to determine whether the adjustment at issue was insignificant and whether or not to disregard it. *SKF USA Inc. and SKF GmbH*, 19 CIT at ——, —— F.Supp. at ——, Slip Op. 95–8 at 11; *SKF USA Inc.*, 19 CIT at ——, —— F.Supp. at ——, Slip Op. 95–6 at 11.

SKF assigned "zero" to its U.S. inland insurance variable on its computer tape. As a result, Commerce determined that:

> ... SKF understated the amounts of U.S. inland insurance on its computer tape. We have used the factor provided by SKF [in the narrative portion of its questionnaire response] to calculate U.S. inland freight and deducted this amount from U.S. price for the final results.

*Final Results,* 57 Fed.Reg. at 28,398.

■ The antidumping statute provides that, whenever a party refuses or is unable to provide information requested in a timely manner and in the form required, Commerce shall use BIA. 19 U.S.C. § 1677e(c) (1988). In this case, however, the record reveals that Commerce had not requested this information or, more accurately, instructed SKF not to report it on its computer tapes having reported it in its narrative response. Commerce's questionnaire specifically instructed:

> ... omit any expense item for which the values for all sales are derived by applying the same factor or percentage to the value of another item. For example, if the per-unit direct advertising expense amount is derived for all ESP sales by multiplying the unit price by three percent, do not include the direct advertising variable in your computer listing. Provide the factor or percentage, and the basis to which it should be applied, in your narrative response.

Public Document No. 26, frame 1721, p. 15. U.S. inland insurance expense was exactly such an expense item, reported as a percentage. SKF complied with the instructions, providing in its narrative response the applicable percentage and the item against which the percentage should be multiplied. It is uncontroverted that SKF provided this information in its narrative response. Therefore, this Court finds that Commerce should not have resorted to BIA. *See SKF USA Inc. and SKF GmbH,* 19 CIT at ——, 875 F.Supp. at 852; *see SKF USA Inc.,* 19 CIT at ——, 874 F.Supp. at 1401.

■ Having determined that it was not for SKF to decide whether its expense was insignificant or should be disregarded and that Commerce should nonetheless not apply BIA, this Court must determine what information should be applied for SKF's U.S. inland insurance expense. Although SKF reported that the correct base to which SKF's insurance rate should be applied was inventory value, Commerce applied the rate to unit price, calling it BIA. Commerce provided no explanation for choosing price over value or for rejecting the information provided by SKF. Upon consideration of the record, this Court can find no reason that Commerce should have chosen a price base in place of the cost base provided. Therefore, this Court finds that Commerce's application of the U.S. inland insurance rate reported in SKF's narrative submission to the unit price was not supported by substantial evidence. *See SKF USA Inc. and SKF GmbH,* 19 CIT at ——, 875 F.Supp. at 852; *see SKF USA Inc.,* 19 CIT at ——, 874 F.Supp. at 1401. This issue is hereby remanded for Commerce to apply SKF's U.S. inland insurance rate to inventory value.

### Conclusion

For the foregoing reasons, this case is remanded to Commerce for inclusion in its circumstance of sale adjustment "first level" indirect selling expenses incurred by SKF which relate to SOS's sales to unrelated purchasers; for correction of the home market indirect selling expense adjustment; and for application of SKF's U.S. inland insurance rate to inventory value. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### *ORDER*

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

ORDERED that this case is remanded to the Department of Commerce, International

Trade Administration, for inclusion in its circumstance of sale adjustment "first level" indirect selling expenses incurred on sales to a related distributor which relate to sales to unrelated purchasers; for correction of its home market indirect selling expense adjustment; and for application of SKF's U.S. inland insurance rate to inventory value; and it is further

ORDERED that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.