**SKF USA INC., SKF France, S.A. and Sarma, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company; Federal–Mogul Corporation, Defendants-intervenors.**

**Slip Op. 95–67.**
**Court No. 93–08–00496.**

United States Court of International Trade.

April 19, 1995.

Howrey & Simon (Herbert C. Shelley, Alice A. Kipel, Anne Talbot, Patricia M. Steele and Juliana M. Cofrancesco), for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Jeffrey M. Telep); of counsel: Thomas H. Fine, Michelle Behaylo, David Ross and Stacy J. Ettinger, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Lane S. Hurewitz, Geert De Prest and Myron A. Brilliant), for defendants-intervenors, Torrington Co.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Larry Hampel, and Joseph A. Perna, V) for defendants-intervenors, Federal–Mogul Corp.

### *OPINION*

TSOUCALAS, Judge:

Plaintiffs, SKF USA Inc., SKF France, S.A. and SARMA (collectively, "SKF"), commenced this action challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce" or "ITA") final results of its administrative review concerning antifriction bearings ("AFBs") (other than tapered roller bearings) and parts thereof. *Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Duty Order ("Final Results")*, 58 Fed.Reg. 39,729 (July 26, 1993), as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 58 Fed.Reg. 42,288 (August 9, 1993), *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 58 Fed.Reg. 51,055 (September 30, 1993), and *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Amendment to Final Results of Antidumping Duty*

*Administrative Reviews,* 59 Fed.Reg. 9,469 (February 28, 1994).

Specifically, plaintiffs contest Commerce's (1) use of best information available ("BIA") in the calculation of constructed value ("CV"); (2) requirement that the cost of material inputs obtained from related suppliers approximate arm's-length price; (3) twice adding profit with regard to inputs purchased from a related supplier, once in the calculation of constructed value for the entire subject article and again in the calculation of material costs for inputs obtained from related suppliers; (4) deduction of direct selling expenses from U.S. price ("USP") in exporter's sales price ("ESP") comparisons; and (5) denial of an adjustment for home market cash discounts.

### Background

On May 15, 1989, Commerce published antidumping duty orders on ball bearings, cylindrical roller bearings and spherical plain bearings and parts thereof. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany,* 54 Fed.Reg. 20,900 (May 15, 1989).

On April 27, 1993, Commerce published the preliminary results of the subject review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 58 Fed.Reg. 25,606 (April 27, 1993).

On July 26, 1993, Commerce published the final results at issue in this case involving AFBs from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom. *Final Results,* 58 Fed. Reg. at 39,729, as amended, *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 58 Fed. Reg. 42,288 (August 9, 1993), *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France and*

*the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 58 Fed.Reg. 51,055 (September 30, 1993), and *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Amendment to Final Results of Antidumping Duty Administrative Reviews,* 59 Fed.Reg. 9,469 (February 28, 1994).

On August 24, 1993, SKF filed its summons in this case, challenging the final results with respect to France.

### Discussion

This Court must uphold final results of an ITA administrative review unless the ITA determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. Constructed Value Calculations

SKF makes three arguments with regard to Commerce's calculation of constructed value. First, SKF asserts Commerce improperly resorted to best information available by increasing by eight percent all material costs for inputs obtained by related suppliers reported by SKF. Citing to the cost of production and constructed value portions of Commerce's questionnaire and its "Section D" response, as well as supplemental questionnaire and response, SKF states Commerce erred as the information allegedly not supplied by SKF had never been requested in the first place. SKF asserts it fully responded to the questions asked both in the initial

questionnaire and in the supplemental questionnaire. *Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("SKF's Brief")* at 14–23.

Second, SKF alleges Commerce erred in concluding that cost of material inputs obtained from related suppliers for CV purposes must approximate an arm's-length price. SKF asserts that the antidumping law does not permit the addition of an amount of eight percent for profit to approximate an arm's-length price for related supplier inputs, where transfer prices were not reported and there is nothing on the record which indicates the values reported were less than the cost of production ("COP"). 19 U.S.C. § 1677b(e)(2) and (3) (1988). SKF therefore asserts it properly reported the actual manufacturing costs incurred by related suppliers and did not report transfer prices. Further, SKF contends not all its material inputs were obtained from related suppliers; and therefore were already reported at arm's-length prices and should not have had their reported value increased for profit. As to these material inputs obtained from unrelated suppliers, SKF states it reported the actual prices it paid for the inputs. *SKF's Brief* at 23–30.

Third, SKF contends Commerce acted contrary to law by adding profit both in the calculation of CV for the entire subject article and in the calculation of material costs for inputs obtained from related suppliers. SKF asserts that only one addition of profit, in the calculation of CV for the entire article, should be made. SKF points out that it reported, in compliance with 19 U.S.C. § 1677b(e)(1) (1988), constructed values which included profit for each class or kind of merchandise as the greater of actual profit calculated or eight percent of the sum of material and fabrication costs and general expenses. Consequently, SKF argues it was contrary to law for Commerce to additionally increase the value of all material inputs by eight percent. *SKF's Response to the Cost of Production and Constructed Value Portions of Commerce's "Section D" Questionnaire*, Public Document No. 103 at 59; *SKF's Brief* at 30–35.

Commerce concedes that its questionnaire was unclear as to whether SKF was required to report the transfer price of related party inputs or the related party's COP of the inputs. Commerce also concedes that it neither gave any indication that SKF's response was deficient nor requested transfer prices of SKF. Consequently, Commerce requests a remand in order to remove BIA from the valuation of SKF's inputs purchased from related parties in its calculation of CV. Commerce also requests a remand to consider whether it may appropriately use transfer prices if they are higher than the costs of producing the inputs and, if necessary, to request transfer prices from SKF. Unsure of its reading of *Federal–Mogul Corp. v. United States*, 18 CIT ——, ——, 862 F.Supp. 384, 403–04 (1994), *mot. granted. remanded*, 18 CIT ——, 872 F.Supp. 1011 (1994), Commerce requests instruction from this Court as to whether the minimum eight percent profit is to be added twice in the CV calculation—once on each related party input and a second time to the total cost of all inputs. *Defendant's Memorandum in Opposition to the Motion of SKF USA, Inc., SKF France, S.A., and SARMA for Judgment Upon the Agency Record ("Defendant's Brief")* at 3–6.

Defendant-intervenor The Torrington Company ("Torrington") asserts application of BIA was appropriate because both the statute and Commerce's questionnaire required SKF to report transfer prices for related party inputs. Torrington argues the BIA chosen was reasonable and did not involve double counting. Citing *Federal–Mogul*, Torrington states Commerce merely made certain that the appropriate COP of material inputs existed before applying the statutory profit for CV calculations. Torrington also contends related party input costs require an eight percent profit adjustment so that they represent arm's-length values. *Opposition of Defendant–Intervenor The Torrington Company to the Motion of the Plaintiffs for Judgment Upon the Administrative Record ("Torrington's Brief")* at 6–15.

Defendant-intervenor Federal–Mogul Corporation ("Federal–Mogul") agrees with the

position of Torrington. *Response of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record ("Federal–Mogul's Brief")* at 4–9.

■ First, as to the application of BIA, this Court finds that Commerce inappropriately applied BIA. Commerce's questionnaire is ambiguous as to whether Commerce was requesting transfer prices or COP of related party inputs. *See Section D Questionnaire,* Public Doc. No. 2 at 73–74. Further, Commerce neither gave any indication that SKF's response was deficient nor requested transfer prices of SKF. Therefore, this Court remands this issue for removal of BIA from Commerce's CV calculation. *See* 19 U.S.C. § 1677e(c) (1988).

Further, the statutory provisions at issue and invoked by the parties are as follows:

**(e) Constructed value**

**(1) Determination**

For the purposes of this subtitle, the constructed value of imported merchandise shall be the sum of—

**(A)** the cost of materials ...

**(B)** an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation, in the usual commercial quantities and in the ordinary course of trade, except that—

. . . . .

**(ii)** the amount for profit shall not be less than 8 percent of the sum of such general expenses and cost;

. . . .

**(2) Transactions disregarded; best evidence**

For the purposes of this subsection, a transaction directly or indirectly between ... [related parties] may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise under consideration. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then the determination of the amount required to be considered shall be based on the best evidence available. . . .

**(3) Special rule**

If, regarding any transaction between ... [related parties] involving the production by one of such persons of a major input to the merchandise under consideration, the administering authority has reasonable grounds to believe or suspect that an amount represented as the value of such input is less than the costs of production of such input, then the administering authority may determine the value of the major input on the best evidence available regarding such costs of production, if such costs are greater than the amount that would be determined for such input under paragraph (2).

19 U.S.C. § 1677b(e).

Under 19 U.S.C. § 1677b(e)(2), Commerce is granted the discretion to disregard transfer prices, if the respondent cannot demonstrate that such prices are consistent with arm's-length prices. Clearly, however, the statute can only apply if the respondent has reported or relied upon transfer prices. SKF did not report or rely upon transfer prices, but provided manufacturing costs. Thus, this part of the statute is inapplicable.

19 U.S.C. § 1677b(e)(3) is also inapplicable in this case. This provision applies where Commerce has reasonable grounds to believe or suspect that the value attributed to inputs is less than the costs of producing those inputs. Commerce has accepted cost of production as the best evidence of the value of inputs from SKF's related supplier. There is no evidence on the record and the defendant-intervenors have not presented any evidence which would suggest that the amount represented as the value of these inputs is less than the COP of the inputs.

Further, defendant-intervenors' reliance on *Federal–Mogul* is misplaced. In *Federal–*

*Mogul,* this Court required Commerce to include the statutory minimum adjustment for profit in calculating constructed value. That instruction was based solely on 19 U.S.C. § 1677b(e)(1). After denying a profit adjustment to COP information of inputs pursuant to 19 U.S.C. § 1677b(e)(3) and disregarding arguments for a similar adjustment pursuant to 19 U.S.C. § 1677b(e)(2), the Court there stated, Commerce "is obligated to allocate profit, as well as various costs and expenses to the products under investigation. *See* 19 U.S.C. § 1677b(e)(1)." *Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 404.

█ In this case, it is the cost of production of inputs that is at issue. Thus, under both 19 U.S.C. § 1677b(e)(2) and (3), there is no adjustment for profit required in the calculation of COP of inputs. *See* discussion *supra.* However, in its calculation of CV, pursuant to 19 U.S.C. § 1677b(e)(1), Commerce must make the necessary adjustment for profit, as was done in *Federal–Mogul. See Federal–Mogul,* 18 CIT at ——, 862 F.Supp. at 404. As required by 19 U.S.C. § 1677b(e)(1), a minimum of eight percent profit has already been added to SKF's general expenses and cost of manufacture on the CV calculated for all subject merchandise. *SKF's Response to the Cost of Production and Constructed Value Portions of Commerce's "Section D" Questionnaire,* Public Document No. 103 at 5.

█ Finally, this Court does not reach the issue of whether Commerce is required to prefer, when considering related party inputs, the transfer price if it is greater than the COP. In this case, Commerce has chosen COP and SKF has provided the requested information. As the choice of COP is accordance with law and supported by substantial evidence, this Court will not remand this issue merely for Commerce to reconsider its choice in this case.

Accordingly, this issue is remanded only for Commerce to remove best information available from Commerce's constructed value calculation of related party inputs (its increase of SKF's value for inputs by a factor of eight percent for profit), leaving untouched its profit adjustment to the total

constructed value made under 19 U.S.C. § 1677b(e)(1)(B)(ii).

### 2. U.S. Direct Selling Expenses

█ SKF asserts Commerce erred in treating SKF's U.S. direct selling expenses as a reduction to U.S. price rather than an addition to foreign market value on exporter's sales price sales. SKF states direct selling expenses should be added to FMV as a matter of law and Commerce acted contrary to the statute and to explicit direction from this Court in deducting them from USP. *SKF's Brief* at 35–37.

While conceding that this Court has ruled adversely to its position on this point, Commerce contends it has acted consistently with 19 U.S.C. § 1677a(e)(2) (1988), rather than adding direct selling expenses to FMV pursuant to the circumstance of sale adjustment contained in 19 U.S.C. § 1677b(a)(4)(B) (1988). Commerce points out its policy has recently been vindicated by the Federal Circuit in *Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A. v. United States,* 36 F.3d 1565 (Fed.Cir.1994), *on remand, remanded,* 1994 WL 661274, 1994 CIT LEXIS 213 (1994). *Defendants' Brief* at 6–8.

Citing *Koyo Seiko,* the defendant-intervenors support Commerce's position. *Torrington's Brief* at 16; *Federal–Mogul's Brief* at 9–10.

The Federal Circuit explained Commerce's practice as follows:

Commerce's practice evidences an attempt to make mirror-image adjustments to foreign market value and exporter's sales price so that they can be fairly compared at the same point in the chain of commerce. The procedure is as follows: In an exporter's sales price transaction, after an initial exporter's sales price is calculated, that value is adjusted, *inter alia,* pursuant to section 1677a(e)(2) by deducting therefrom all selling expenses (both direct and indirect) incurred in making U.S. sales. Then, in determining an initial foreign market value, appropriate sales are identified in the home market or third country pursuant to 19 U.S.C. § 1677b(a). Next, the initial foreign market value is adjusted,

*inter alia,* by deducting therefrom a "circumstances of sale" amount to account for "any difference between the United States price and the foreign market value," 19 U.S.C. § 1677b(a)(4), for example, direct selling expenses incurred in making home market sales. In this way, the section 1677b(a)(4) adjustment to foreign market value counterbalances the section 1677a(e)(2) adjustment to exporter's sales price. As a result, the two parameters may be compared on equivalent terms.

*Koyo Seiko,* 36 F.3d at 1573.

The Federal Circuit went on to specifically uphold Commerce's reading of the statute:

> Nothing in the plain language or the legislative history of the Antidumping Act precludes Commerce's approach of adjusting exporter's sales price by deducting therefrom certain direct selling expenses incurred in the United States. Indeed, Commerce's stated rationale for its approach is well within the bounds of reasonableness. Moreover, because we recognize that Commerce is "the 'master' of the antidumping law, worthy of considerable deference," *Daewoo Elecs.,* 6 F.3d [1511] at 1516, [1993] we defer to its approach.

*Id.* at 1575.

Accordingly, as the law is now clear that Commerce's methodology of adjusting United States price for selling expenses, both direct and indirect, incurred with respect to ESP sales, is reasonable and in accordance with law, this Court affirms Commerce on this issue.

3. *SKF France Home Market Cash Discounts*

■ SKF contends that Commerce's rejection of SKF France's cash discounts on home market sales as a direct adjustment to foreign market value is contrary to law since the discounts were verified and directly related to sales. Because the discounts reported reflected actual discounts paid and were verified by Commerce, SKF asserts Commerce should not have denied an adjustment for these cash discounts as indirect expenses. SKF concedes that it allocated actual discounts over net sales, but asserts that such a reporting methodology was necessary be-

cause the company's computerized record-keeping systems did not allow it to report the cash discounts on an invoice- or customer-specific basis. *SKF's Brief* at 37–44.

SKF argues that, at minimum, Commerce should treat the discounts as an indirect adjustment to FMV as it typically has done with expenses disallowed as direct expenses. SKF concedes this Court has held to the contrary, but makes its argument to preserve its right of appeal on this issue. *Id.*

Commerce asserts its denial of both direct and indirect adjustments was proper because SKF failed to report the claimed discounts on an actual product-, transaction- or customer-specific basis. Commerce states it generally does not permit the allocation of discounts, but instead requires that they be reported on a transaction-specific basis. Commerce emphasizes that it does not permit the allocation of discounts across all sales because such a practice distorts actual prices for each specific sale: sales for which a discount was incurred will be allocated less of the discount than was actually incurred and sales for which no discount was incurred will nonetheless be allocated a portion of the total discounts. Where discounts are reported on a customer-specific or a product-specific basis, Commerce treats them as indirect selling expenses. *Defendant's Brief* at 8–14.

Torrington and Federal–Mogul agree with the arguments made by Commerce and request that the Court affirm Commerce's action. *Torrington's Brief* at 16–18; *Federal–Mogul's Brief* at 10–11.

Commerce explained its methodology in the Final Results:

> [D]iscounts, rebates, or price adjustments based on allocations are not allowable as direct adjustments to price. Allocated price adjustments have the effect of distorting individual prices by diluting the discounts or rebates received on some sales, inflating them on other sales, and attributing them to still other sales that did not actually receive any at all....
>
> Therefore, we have made direct adjustments for reported home market discounts, rebates, and price adjustments if (a) they were calculated on a transaction-

specific basis and were not based on allocations, or (b) they were granted as a fixed and constant percentage of sales on all transactions for which they are reported. If these adjustments were not fixed and constant but were allocated on a customer-specific or a product-specific basis, we treated them as indirect selling expenses. We did not accept discount or rebate amounts based on allocations unless the allocations calculate the actual amounts for each individual sale.

*Final Results,* 58 Fed.Reg. at 39,759.

Upon consideration of the administrative record, this Court finds that SKF France's allocation of discounts fails to distinguish those sales for which cash discounts were granted from those for which cash discounts were not granted.

Commerce makes adjustments for discounts and rebates pursuant to 19 U.S.C. § 1677a (1988) and 19 U.S.C. § 1677b (1988), which require it to determine what price was actually charged for subject merchandise. *See Torrington Co. v. United States,* 17 CIT ——, ——, 818 F.Supp. 1563, 1578–79 (1993), *appeal after remand, remanded,* 17 CIT ——, ——, 834 F.Supp. 1391 (1993). More specifically, the Federal Circuit has held that, to allow an adjustment to FMV, it must be directly correlated with specific in-scope merchandise on the basis of actual costs. *Smith–Corona Group v. United States,* 713 F.2d 1568, 1580 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

Because it failed to report its cash discounts on a customer-specific or transaction-specific basis, SKF France cannot be allowed a direct or an indirect adjustment to FMV for home market cash discounts. *See Torrington Co. v. United States,* 17 CIT ——, 850 F.Supp. 1 (1993). Thus, this Court hereby affirms Commerce's actions on the basis of SKF's allocation methodology.

## Conclusion

For the foregoing reasons, this case is remanded to Commerce for removal of best information available from Commerce's constructed value calculation of related party inputs. Commerce's determination is af-

firmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

## *ORDER*

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration, for removal of best information available from Commerce's constructed value calculation of related party inputs; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that responses or comments are due.