Slip Op. 00-2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                       :
SKF USA INC. and SKF SVERIGE AB,       :
                                       :
            Plaintiffs and             :
            Defendant-Intervenors,     :
                                       :
       v.                              :    Consol. Court No.
                                       :    97-01-00054-S2
UNITED STATES,                         :
                                       :
            Defendant,                 :
                                       :
            and                        :
                                       :
THE TORRINGTON COMPANY,                :
                                       :
            Defendant-Intervenor       :
            and Plaintiff.             :
_____:


     Plaintiffs and defendant-intervenors, SKF USA Inc. and SKF Sverige AB (collectively "SKF"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews</u> ("<u>Final Results</u>"), 61 Fed. Reg. 66,472 (Dec. 17, 1996). Defendant-intervenor and plaintiff, The Torrington Company ("Torrington"), also moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging Commerce's <u>Final Results</u>.

     Specifically, SKF claims that Commerce erred in: (1) disregarding SKF's negative home market billing adjustment number two values in calculating foreign market value; and (2) including SKF's zero-value United States transactions in its margin calculations.

     Torrington claims that Commerce committed several clerical errors. Specifically, Torrington argues that Commerce: (1) improperly converted the difference in merchandise ("DIFMER")

variable; (2) improperly converted certain variables from Italian lira to dollars; (3) improperly converted the variable cost of manufacture ("VCOMH"); and (4) incorrectly computed home market indirect selling expenses.

**Held:** SKF's motion is granted in part and denied in part. Torrington's motion is granted. The case is remanded to Commerce to: (1) exclude any transactions that were not supported by consideration from SKF's United States sales database and to adjust the dumping margins accordingly; (2) use the appropriate exchange rate to convert the DIFMER variable; (3) convert certain variables to reflect that they were reported in hundreds of Italian lira; (4) use the appropriate exchange rate to convert the VCOMH from Swedish krona to United States dollars; and (5) correct the programming language that calculates home market indirect selling expenses.

[SKF's motion is granted in part and denied in part. Torrington's motion is granted. Case remanded.]

Dated: January 5, 2000

Steptoe & Johnson LLP (Herbert C. Shelley and Alice A. Kipel) for SKF.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Mark A. Barnett, Attorney-Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, William A. Fennell, Geert De Prest and Lane S. Hurewitz) for Torrington.


**OPINION**

**TSOUCALAS, Senior Judge:** Plaintiffs and defendant-intervenors, SKF USA Inc. and SKF Sverige AB (collectively "SKF"), move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled

Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews ("Final Results"), 61 Fed. Reg. 66,472 (Dec. 17, 1996). Defendant-intervenor and plaintiff, The Torrington Company ("Torrington"), also moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging Commerce's Final Results.

Specifically, SKF claims that Commerce erred in: (1) disregarding SKF's negative home market billing adjustment number two values in calculating foreign market value ("FMV"); and (2) including SKF's zero-value United States transactions in its margin calculations.

Torrington claims that Commerce committed several clerical errors. Specifically, Torrington argues that Commerce: (1) improperly converted the difference in merchandise ("DIFMER") variable; (2) improperly converted certain variables from Italian lira to dollars; (3) improperly converted the variable cost of manufacture ("VCOMH"); and (4) incorrectly computed home market indirect selling expenses.

**BACKGROUND**

This case concerns the fifth review of the antidumping duty order on antifriction bearings (other than tapered roller bearings) and parts thereof ("AFBs") imported to the United States during the review period of May 1, 1993 through April 30, 1994.[1]  Commerce published the preliminary results of the subject reviews on December 7, 1995.  See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Japan, Singapore, Sweden, Thailand, and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Notice of Intent to Revoke Order, 60 Fed. Reg. 62,817.  Commerce published the Final Results on December 17, 1996.  See 61 Fed. Reg. at 66,472.

**STANDARD OF REVIEW**

The Court will uphold Commerce's final determination in an administrative review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994).

---

[1] Since the administrative reviews at issue were initiated before January 1, 1995, here, June 22, 1994 and July 15, 1994, the applicable law is the antidumping statute as it existed prior to the amendments made by the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994).  See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

## DISCUSSION

### I.   Jurisdiction

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c) (1994).

### II.  SKF's Home Market Billing Adjustment Number Two Values

Title 19, United States Code, §§ 1677a and 1677b require Commerce to determine the price actually charged to a customer both in the home market, that is, FMV, and in the United States for the merchandise at issue.  See 19 U.S.C. §§ 1677a, 1677b (1988).  The actual price charged to a customer necessarily includes adjustments for discounts or rebates paid by the company to the customer.  In this case, SKF reported billing adjustment two in the Swedish home market which was used for debits and credits related to multiple invoices, invoice lines or products.  Credits to customers were reported as negative values and decreased FMV.  SKF did not report any debits (positive values) for billing adjustment two, which would have increased FMV.

In the Final Results, Commerce stated its intention to differentiate between positive and negative billing adjustment values by making upward adjustments to the home market price for customer numbers that were positive and disregarding the reported values for negative numbers.  See 61 Fed. Reg. at 66,498.

SFK complains that Commerce's disparate treatment of positive and negative values for billing adjustment two has adverse effects. First, SKF contends that disparate treatment of negative and positive values distorts the calculation of FMV so that it does not fairly represent the price actually paid by Swedish customers. See SKF's Br. Supp. Mot. J. Agency R. at 8-9. Specifically, SKF argues that by rejecting the negative values, Commerce does not properly take into account the credits granted to customers and, therefore, does not decrease FMV to the extent it should. See id. at 7-9. SKF claims that the price distortion results in a skewed comparison between home and United States prices. See id. at 8.

Second, SKF asserts that Commerce cannot include all positive values as direct adjustments in the margin calculations without determining whether they include out-of-scope merchandise. See id. at 14. SKF contends that Commerce deviates from its principle of rejecting values derived from allocations by accepting the positive values. See id.

SKF, however, reported no positive billing adjustments in the Swedish market. SKF's arguments regarding the disparate treatment of positive and negative values are relevant only where both positive and negative billing adjustments are reported.[2] Because

---

[2] For example, SKF reported positive as well as negative billing adjustments in the German market. See SKF USA Inc. v.

SKF did not report positive values, the Court will only consider whether Commerce's treatment of the negative values was in accordance with law.

Commerce denied the negative values, arguing that such action was proper since SKF did not tie the adjustments to specific transactions nor grant them as a fixed percentage across sales. See Def.'s Partial Opp'n to Pls.' Mots. J. Agency R. at 2; Final Results, 61 Fed. Reg. at 66,499. The Court finds that Commerce's action was proper. It is well-established that Commerce's decision to deny a direct adjustment to FMV is reasonable and proper if the adjustment sought is not reported on either a transaction-specific basis or as a fixed and constant percentage of the sales price of all transactions for which it was reported. See SKF USA Inc. v. United States, 19 CIT 625, 633, 888 F. Supp. 152, 159 (1995); SKF USA Inc. v. United States, 19 CIT 79, 86, 875 F. Supp. 847, 853 (1995); SKF USA Inc. v. United States, 19 CIT 54, 65, 874 F. Supp. 1395, 1405 (1995). "The party seeking a direct price adjustment bears the burden of proving entitlement to such an adjustment." SKF USA Inc. v. United States, 180 F.3d 1370, 1377 (Fed. Cir. 1999) (citing Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1040 (Fed. Cir. 1996)).

_____

United States, 23 CIT __, Slip. Op. 99-127, 1999 WL 1129708 (Dec. 2, 1999).

Because SKF's improper reporting made it impossible for Commerce to determine if the claimed adjustment pertained to the subject merchandise, Commerce determined that SKF had not met its burden. The Court finds, therefore, that Commerce properly declined to make the negative adjustments because of SKF's failure to tie the expenses to specific transactions or products. See Torrington Co. v. United States, 82 F.3d 1039, 1050-51 (Fed. Cir. 1996). Since Commerce's decision to deny the negative adjustment was in accordance with law, Commerce's determination is affirmed.

## III. SKF's Zero-Value United States Transactions

SKF argues that in light of NSK Ltd. v. United States, 115 F.3d 965, 975 (Fed. Cir. 1997), the Court should remand the matter to Commerce to exclude SKF's zero-value transactions from its margin calculations. See SKF's Br. Supp. Mot. J. Agency R. at 31. SKF's rationale is that the United States transactions at zero value, such as prototypes and samples, do not constitute true sales and, therefore, should be excluded from the margin calculations pursuant to NSK. See id. The identical issue was decided by this Court in SKF USA Inc. v. United States, 23 CIT __, Slip Op. 99-56, 1999 WL 486537 (June 29, 1999).

Torrington concedes that a remand may be necessary in light of NSK, but argues that further factual inquiry by Commerce is

necessary to determine whether the zero-price transactions were truly without consideration or if they were matched to sales above fair value in an effort to allow the customer to purchase merchandise below fair value. See Torrington's Br. Resp. to SKF's Mot. J. Agency R. at 11. Torrington argues that only if the transactions are truly without consideration can they fall within NSK's exclusion. See id. at 12.

Commerce concedes that the case should be remanded to it to exclude the sample transactions for which SKF received no consideration from SKF's United States sales database. See Def.'s Partial Opp'n to Pls.' Mots. J. Agency R. at 27.

Commerce is required to impose antidumping duties upon merchandise that "is being, or is likely to be, sold in the United States at less than its fair value." 19 U.S.C. § 1673(1) (1988). A zero-priced transaction does not qualify as a "sale" and, therefore, by definition cannot be included in Commerce's FMV calculation. See NSK, 115 F.3d at 975 (holding "that the term sold . . . requires both a transfer of ownership to an unrelated party and consideration"). Thus, the distribution of AFBs for no consideration falls outside the purview of 19 U.S.C. § 1673. Consequently, the Court remands to Commerce to exclude any

transactions that were not supported by consideration from SKF's United States sales database and to adjust the dumping margins accordingly.


**IV.  Clerical Errors**

Torrington alleges that Commerce committed four clerical errors and requests a remand to allow Commerce to rectify them. First, Torrington alleges that the computer program ("program") for the Final Results does not properly convert the DIFMER variable from Swedish krona to United States dollars. See Torrington's Mot. J. Agency R. at 5.  Second, Torrington alleges that the program understates the value of certain variables by a factor of one hundred because the program did not account for the fact that SKF had reported the variables in hundreds of Italian lira. See id. Third, Torrington alleges that the program does not properly convert the VCOMH, and should be changed to reflect the fact that SKF reports VCOMH in Swedish krona. See id. at 6.  Fourth, Torrington alleges that the program incorrectly computes home market indirect selling expenses because it contains a typographical error which repeats the program language. See id.

Commerce agrees that a remand is necessary to correct the errors. See Def.'s Partial Opp'n to Pls.' Mots. J. Agency R. at 28.

Upon review of the record, this Court concludes that the computer program indeed contained clerical errors.  The Court, therefore, remands to Commerce to: (1) use the appropriate exchange rate to convert the DIFMER variable; (2) convert certain variables to reflect that they were reported in hundreds of Italian lira; (3) use the appropriate exchange rate to convert the VCOMH from Swedish krona to United States dollars; and (4) correct the programming language that calculates home market indirect selling expenses.

## CONCLUSION

The case is remanded to Commerce to: (1) exclude any transactions that were not supported by consideration from SKF's United States sales database and to adjust the dumping margins accordingly; and (2) correct the clerical errors pertaining to the DIFMER variable, the reporting of variables in hundreds of Italian lira, the VCOMH variable and home market indirect selling expenses. Commerce is affirmed in all other respects.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    January 5, 2000
          New York, New York